**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
Albany Division**

| | | |
|---|---|---|
| Kimberly Childs, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:23-cv-00197-LAG |
| vs. | ) ) | |
| Hyphen, LLC, and Lead Bank | ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS HYPHEN, LLC AND LEAD BANK'S BRIEF IN SUPPORT OF
MOTION TO DISMISS FOR FAILURE TO STATE CLAIM**

Kurt M. Rozelsky (GA State Bar #617932)
SPENCER FANE LLP
27 Cleveland Street, Suite 201,
Greenville, South Carolina 29601
P: 864.695.5200, F: 864.695.5201
krozelsky@spencerfane.com

Patrick J. McAndrews *(Pro hac forthcoming)*
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106-2140
(816) 474-8100
(816) 474-3216 (facsimile)
pmcandrews@spencerfane.com
*Attorneys for Hyphen, LLC*

Corrie Hall (Georgia State Bar # 287199)
S. Elizabeth Hall (Georgia State Bar #141718)
James Bates Brannan Groover LLP
231 Riverside Drive, Suite 100
Macon, GA 31201
(478) 742-4280
(478) 749-9949
chall@jamesbatesllp.com
ehall@jamesbatesllp.com
*Attorneys for Lead Bank*

i

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.    BACKGROUND ....................................................................................................2

    A.    Federal Law .................................................................................................3

        1.    State-Chartered Banks .....................................................................3

        2.    "Unlawful Debt" Collection Under RICO .......................................6

    B.    Georgia Law...............................................................................................7

III.    STANDARDS OF REVIEW .................................................................................9

IV.    ARGUMENT .........................................................................................................9

    A.    Lead Bank Should Be Summarily Dismissed.........................................10

    B.    Plaintiff's Claim Against Hyphen For "Violations of Georgia Usury Laws" Fails Because The Loan Was Issued By Lead Bank And Federal Law Preempts Plaintiff's "True Lender" Claim ....................................12

    C.    Plaintiff's Federal and State RICO Claims Against Hyphen And Lead Bank Should Be Dismissed Because Plaintiff Has Not Established An "Enterprise"...............................................................................................14

    A.    Plaintiff Has Failed To Demonstrate A RICO Conspiracy....................16

V.    CONCLUSION....................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ...................................................................................................9

*BankWest, Inc. v. Baker,*
 411 F.3d 1289 (11th Cir.), *reh'g en banc granted, opinion vacated,* 433 F.3d
 1344 (11th Cir. 2005), *vacated,* No. 04-12420, 2006 WL 1329700 (11th Cir.
 Apr. 27, 2006) .............................................................................................................5

*Beneficial Nat. Bank v. Anderson,*
 539 U.S. 1 (2003) ......................................................................................................11

*Berger v. Pierce,*
 933 F.2d 393 (6th Cir. 1991) ....................................................................................11

*California v. Fed. Deposit Ins. Corp.,*
 584 F. Supp. 3d 834 (N.D. Cal. 2022) ........................................................................8

*Chaney v. Dreyfus Serv. Corp.,*
 595 F.3d 219 (5th Cir. 2010) ....................................................................................16

*Cisneros v. Petland, Inc.,*
 972 F.3d 1204 (11th Cir. 2020) ................................................................................15

*Cmty. State Bank v. Strong,*
 485 F.3d 597 (11th Cir.), *reh'g en banc granted, opinion vacated,* 508 F.3d
 576 (11th Cir. 2007), *vacated on other grounds,* 565 F.3d 1305 (11th Cir.
 2009) ..........................................................................................................................14

*Cmty. State Bank v. Strong,*
 651 F.3d 1241 (11th Cir. 2011) .............................................................................8, 12

*Crenshaw v. Lister,*
 556 F.3d 1283 (11th Cir. 2009) .............................................................................9, 13

*DeFalco v. Bernas,*
 244 F.3d 286 (2d Cir. 2001) ......................................................................................14

*Flagg v. First Premier Bank,*
 257 F. Supp. 3d 1351 (N.D. Ga. 2017) ......................................................8, 9, 14, 15

*Gaither v. Farmers & Mechs. Bank of Georgetown,*
 26 U.S. (1 Pet.) 37 (1828) ...........................................................................................4

iii

*Hall v. White*,
  No. 07-S-484, 2008 WL 11380043 (N.D. Ala. Mar. 11, 2008)............................................10

*Jackson v. BellSouth Telecomm.*,
  372 F.3d 1250 (11th Cir. 2004) ......................................................................................11

*Kante v. Countrywide Home Loans*,
  No. 09-01233, 2010 WL 11520068 (N.D. Ga. Mar. 24, 2010) .........................................7

*Kaur v. World Bus. Lenders, LLC*,
  440 F. Supp. 3d 111 (D. Mass. 2020) .............................................................................13

*Latimore v. Vatacs Grp., Inc.*,
  317 Ga. App. 98, 729 S.E.2d 525 ....................................................................................8

*Madden v. Midland Funding, LLC*,
  786 F.3d 246 (2d Cir. 2015)...........................................................................................5, 6

*Marquette Nat. Bank of Minneapolis v. First of Omaha Service Corp.*,
  439 U.S. 299 (1978).......................................................................................................3, 4

*Midland Funding, LLC v. Madden*,
  579 U.S. 927, 136 S. Ct. 2505, 195 L. Ed. 2d 839 (2016).................................................6

*Nichols v. Fearson*,
  32 U.S. 103 (1833).............................................................................................................4

*Nolen v. Nucentrix Broadband Networks Inc.*,
  293 F.3d 926 (5th Cir. 2002) ............................................................................................7

*Olvera v. Blitt & Gaines, P.C.*,
  431 F.3d 285 (7th Cir. 2005) ............................................................................................5

*Omnipol, A.S. v. Multinational Def. Servs., LLC*,
  32 F.4th 1298 (11th Cir. 2022) .......................................................................................12

*Pac. Capital Bank, N.A. v. Connecticut*,
  542 F.3d 341 (2d Cir.2008)..............................................................................................11

*Parm v. Nat'l Bank of California, N.A.*,
  242 F. Supp. 3d 1321 (N.D. Ga. 2017) .............................................................................3

*Parm v. Nat'l Bank of California, N.A.*,
  No. 14-0320, 2015 WL 11605748 (N.D. Ga. May 20, 2015), *aff'd,* 835 F.3d
  1331 (11th Cir. 2016)......................................................................................................11

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993).........................................................................................................15

*Ricks v. Handi-House Mfg. Co.*,
No. 17-89, 2019 WL 1338415 (S.D. Ga. Mar. 25, 2019) ....................................14

*Sawyer v. Bill Me Later, Inc.*,
23 F. Supp. 3d 1359 (D. Utah 2014) ......................................................................3

*Sullivan v. Am. Airlines, Inc.*,
424 F.3d 267 (2d Cir.2005)....................................................................................11

*Western Sky Financial, LLC v. Olens*,
300 GA 340 (2016) ...........................................................................................8, 11

*Williams v. Encore Capital Group, Inc.*,
19-5252, 2022 WL 3722096 (E.D. Pa. Aug. 29, 2022) ...........................................6

**Statutes**

18 U.S.C. § 1961 *et seq.*.....................................................................................7, 14

18 U.S.C. § 1962(c) ...............................................................................3, 6, 7, 14, 15

Depository Institution Deregulation and Monetary Control Act, 12 U.S.C. § 1831
*et seq.* ..................................................................................................................1, 3

Fair Debt Collection Practices Act ...............................................................................5

Federal Deposit Insurance Act ...............................................................3, 4, 6, 8, 11

Georgia Installment Loan Act...................................................................................1, 2

National Bank Act......................................................................................................3, 5

O.C.G.A. § 7-4-2.......................................................................................................7, 8

O.C.G.A. § 7-4-10........................................................................................................8

O.C.G.A. § 16–14–1 *et seq.* ....................................................................................14

O.C.G.A. § 16-17-1, *et seq.*.("Georgia Payday Lending Act") .......................... 1, 5, 8, 11-13, 16

Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. §§ 1961-
1968......................................................................................................... 3, 7, 10-16

**Other Authorities**

12 C.F.R. § 331.4. Section 331.4 ................................................................................6

85 Fed. Reg. 44,146- 147 (July 22, 2020) ...........................................................4, 6, 8

85 Fed. Reg. 33530 (June 2, 2020) ...........................................................................6

85 FR 44,146-01 (July 22, 2020) ............................................................................6

Fed. R. Civ. P. 12(b)(6)........................................................................................1, 16

4 Ga. Jur. § 4:25 ......................................................................................................8

Logan C. Hinderliter, *True Lenders, the Valid-When-Made Doctrine, and A
    Nationwide Interest Rate Cap*, 53 Seton Hall L. Rev. 569, 580 (2022) ...................................4

## I.    INTRODUCTION

Plaintiff has brought this Class Action Complaint ("Complaint," Doc. 1) against Defendants Lead Bank and Hyphen, LLC ("Hyphen") arising out of a consumer installment loan that was issued by Lead Bank.[1]  (Doc. 1 ¶ 19.)  Plaintiff alleges that the loan did not comply with Georgia law (e.g., the Georgia Installment Loan Act[2] ("ILA")) and brings state and federal racketeering claims based on "the collection of unlawful debt," which she defines as a debt that was incurred in connection with the business of lending money at a rate usurious under state law. (Doc. 1 ¶ 121, *see* Doc. 1 ¶¶ 108-140.)

The loan agreement is attached to Plaintiff's Complaint at "Exhibit A."  (Doc. 1-1.)  The loan agreement states that the loan was issued by Lead Bank (in fact, Plaintiff admits that Lead Bank is identified as the lender, Doc. 1 ¶ 93, and admits that "Plaintiff executed her loan with Lead Bank," *id.* ¶ 20).  (*E.g.*, Doc. 1-1 at p. 3; *see generally*, Ex. 1-1.)  Lead Bank is a state-chartered bank and is insured by the Federal Deposit Insurance Corporation ("FDIC").  (Compl. ¶ 27.)  <u>Lead Bank is undisputedly exempt from Georgia usury law</u>.  S*ee* 12 U.S.C. § 1831d(a) (permitting a federally insured state-chartered bank to charge interest "at the rate allowed by the laws of the State . . . where the bank is located").

As set forth fully below, Plaintiff's Complaint contains claims that are simply not plausible on their face. Thus, Defendants ask that the Court dismiss Plaintiff's Complaint with prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

---

[1] Hyphen and Lead Bank are collectively referred to as "Defendants."

[2] The ILA is also known as the Payday Lending Act.

## II.    BACKGROUND

Plaintiff alleges that she is a resident of Georgia and that in 2019, she applied for and received a loan that "was purportedly between her and Lead Bank." (Doc. 1 ¶ 19.) The loan is attached as "Exhibit A" to Plaintiff's Complaint. (Doc. 1-1.) The loan agreement, which was effective on December 9, 2019, states that it is issued by Lead Bank, 9019 S 7 Highway, Lee's Summit, MO 64064, and the definitions state:

> In this Consumer Installment Loan Agreement (the 'Agreement') the words 'you', 'your' and 'I' mean the borrower who has electronically signed it. The words 'we', 'us,' and 'our' mean **Lead Bank**, a Missouri-chartered bank.

(Doc. 1-1 at pp. 3, 4 (emphasis added).) The loan agreement provides that Missouri law governs the agreement. (Doc. 1-1 at 6.) It is alleged that the interest rate on the loan is greater than the maximum legal rate allowed under the Georgia Installment Loan Act ("ILA"), but Plaintiff does not allege that it is invalid under federal law or Missouri law.

The loan agreement contains an assignment clause, which states that "[w]e may assign or transfer this Agreement or any of our rights hereunder," and a governing law provision, which states that Missouri law governs the agreement. (*Id.* at 6.) Furthermore, the loan agreement includes a "Servicing Notice," whereby Hyphen serviced the loan for Lead Bank. (*Id.* at 14.)

Almost four years after she obtained the loan, Plaintiff filed this Complaint, alleging that Hyphen, not Lead Bank, is the "true lender" and that, as such, Hyphen violated "Georgia Usury Laws." (Doc. 1 ¶¶ 108-115 (Count I).) Plaintiff does not allege that Lead Bank violated "Georgia Usury Laws," however. (*See* Doc. 1.)

Despite that Plaintiff does not allege that Lead Bank violated "Georgia Usury Laws," she brought claims against it and Hyphen for violating RICO and the concomitant Georgia RICO laws for "unlawful lending" and "collection of unlawful debt." (Doc. 1 ¶¶ 116-140 (Counts II – IV).) The Complaint contains the following four counts: (1) violations or Georgia Usury Laws against

Hyphen; (2) violation of RICO[3], 18 U.S.C. § 1962(c) against Hyphen and Lead Bank; (3) violation of RICO, 18 U.S.C. § 1962(d) against Hyphen and Lead Bank; and (4) violation of Georgia RICO against Hyphen and Lead Bank.  (*Id.* ¶¶ 108-140.)

### A.    Federal Law

#### 1.    State-Chartered Banks

Lead Bank is headquartered in Missouri and is FDIC-insured.[4]  (Doc. 1 ¶ 27.)  Plaintiff does not allege that her loan is unlawful under Missouri or federal law.  (*See* Doc. 1.)

A state-charted bank, which Lead Bank undisputedly is (*id.* ¶ 27), has the right under Section 27 of the Federal Deposit Insurance Act ("FDIA") to charge interest "on any loan" "at the rate allowed by the laws of the State . . . where the bank is located."  12 U.S.C. § 1831d(a)[5]; *e.g., Sawyer v. Bill Me Later, Inc.*, 23 F. Supp. 3d 1359, 1363 (D. Utah 2014).  "This federal statute expressly preempts 'any State constitution or statute' that sets forth state usury laws prohibiting an interest rate allowed by the state in which the state-chartered, federally insured bank is located." *Sawyer v. Bill Me Later, Inc.*, 23 F. Supp. 3d 1359, 1363 (D. Utah 2014) (citing 12 U.S.C. § 1831d and *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 10, (2003) (holding that "there is, in sort, no such thing as a state-law claim of usury against a national bank.")).

---

[3] "RICO" is the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. §§ 1961-1968.

[4] The FDIC regulates state-chartered banks.  *Parm v. Nat'l Bank of California, N.A.*, 242 F. Supp. 3d 1321, 1331 (N.D. Ga. 2017).

[5] "Sections 85 and 86 of the National Bank Act and § 1831d of the Depository Institution Deregulation and Monetary Control Act ['DIDA'] are virtually identical. The former applies to national banks while the latter applies to state-chartered federally-insured banks."  *Sawyer v. Bill Me Later, Inc.*, 23 F. Supp. 3d 1359, 1363 (D. Utah 2014).  Thus, "the same express preemption analysis governing Sections 85 and 86 of the National Bank Act applies to preemption of statute usury laws under Section 27 of the FIA . . . ."  *Id.; see also*, *Marquette Nat. Bank of Minneapolis v. First of Omaha Service Corp.*, 439 U.S. 299, 314 (1978).

The United States Supreme Court long ago held that a national bank may charge interest on a loan at the rate allowed by the state in which the bank is "located." *Marquette Nat. Bank of Minneapolis v. First of Omaha Service Corp.*, 439 U.S. 299, 301 (1978). Thus, national banks (and their state-chartered counterparts) may export interest rates that are legal in the state that they operate to any other state, regardless of where the borrower resides. *Id.* at 313; 85 Fed. Reg. 44, 146-147 ("Because section 27 was patterned after section 85 . . . courts and the FDIC have consistently construed section 27 in *pari materia* with section 85."). This is known as the "exportation doctrine" and the holding of *Marquette* is likely the genesis of the doctrine. The exportation doctrine has not been limited to credit card arrangements, and it is applicable to consumer loans, car title loans, and installment loans. Logan C. Hinderliter, *True Lenders, the Valid-When-Made Doctrine, and A Nationwide Interest Rate Cap*, 53 Seton Hall L. Rev. 569, 580 (2022).

Furthermore, under the long established "valid-when-made" rule, if the interest rate in the bank's original loan agreement was not usurious, then the loan does not become usurious upon assignment. *Nichols v. Fearson*, 32 U.S. 103, 106 (1833) (holding that "a contract free from usury in its inception, shall not be invalidated by any subsequent usurious transactions upon it."); *Gaither v. Farmers & Mechs. Bank of Georgetown*, 26 U.S. (1 Pet.) 37, 43 (1828) ("[T]he rule cannot be doubted, that if the note be free from usury, in its origin, no subsequent usurious transactions respecting it, can affect it with the taint of usury.").

With the advent of online access to credit (i.e., financial technology ("FinTech")), state legislatures (and then courts) began to attack the enforceability of loans that did not comply with their state laws by implementing a "predominate economic interest" or "true lender" test. Hinderliter, *supra*, p.583. These tests, which Plaintiff advances here, appears to have emerged out

of O.C.G.A. § 16-17-2, which was enacted in 2004. *Cf. BankWest, Inc. v. Baker*, 411 F.3d 1289, 1298 (11th Cir.), *reh'g en banc granted, opinion vacated,* 433 F.3d 1344 (11th Cir. 2005), *vacated,* No. 04-12420, 2006 WL 1329700 (11th Cir. Apr. 27, 2006), and *vacated,* 446 F.3d 1358 (11th Cir. 2006) (discussing § 16-17-2).

Section 16-17-2(a) provides that it is unlawful for a person to engage in the business of making loans of $3,000 or less unless an exception applies. O.C.G.A. § 16-17-2(a). Section 16-17-2(b)(4) further provides that the Section 16-17-2(a) applies to "[a]ny arrangement by which a de facto lender purports to act as the agent for an exempt entity," and the "purported agent shall be considered the de facto lender if the entire circumstances of the transaction show that the purported agent holds, acquires, or maintains *a predominant economic interest* in the revenues generated by the loan." O.C.G.A. § 16-17-2(b)(4) (emphasis added). Other states then began to follow suit, enacting similar laws, Hinderliter, *supra*, at 583-84, and then, of course, litigation followed.[6] *See, e.g.*, *supra*, *BankWest, Inc.*

In 2015, the tension between state and federal law became more pronounced when the Second Circuit Court of Appeals issued the decision *Madden v. Midland Funding, LLC*, 786 F.3d 246, 251 (2d Cir. 2015). In that case, the court considered whether federal law (the National Bank Act, "NBA") preempted plaintiff's claim that a national bank's assignee (a non-bank) violated state usury law by collecting interest that exceeded New York law. The court did not discuss the valid-when-made doctrine and determined that because the defendants were not a national bank or

---

[6] *See also*, *Olvera v. Blitt & Gaines, P.C.*, 431 F.3d 285 (7th Cir. 2005), where the court discussed the convergence of federal and state law in this arena. In that case, the plaintiff alleged that an assignee violated the Fair Debt Collection Practices Act by charging interest at a rate that was prohibited under Illinois law vis-à-vis the assignee but was permissible for the credit card company as a bank. *Id.* at 286. The court rejected the plaintiff's claim, determining that there are "innocent reason[s]" that creditors assign their accounts that businesses outsource phases of production and that interpreting the state law to reach assignees "would make the credit market operate less efficiently." *Id.* at 288.

a subsidiary or agent of a national bank or acting on behalf of a national bank, "and because application of the state law on which Madden's claims rely would not significantly interfere with any national bank's ability to exercise its powers under the NBA," the NBA did not preempt plaintiff's claims. *Id.* at 249.

In response to the Second Circuit's decision in *Madden*[7], the Office of the Comptroller of the Currency and the FDIC each issued rules clarifying that interest rates on loans made by national or state-chartered banks remain valid regardless of the subsequent sale or assignment of the loan. 85 Fed. Reg. 33530 (June 2, 2020); 85 Fed. Reg. 44,146 (July 22, 2020) ("FDIC Rule"). The FDIC Rule provides that whether interest on a loan is permissible under Section 27 of the FDIA is determined at the time the time the loan is made, stating:

> (e) Determination of interest permissible under section 27. Whether interest on a loan is permissible under section 27 of the Federal Deposit Insurance Act is determined as of the date the loan was made. Interest on a loan that is permissible under section 27 of the Federal Deposit Insurance Act shall not be affected by a change in State law, a change in the relevant commercial paper rate after the loan was made, *or the sale, assignment, or other transfer of the loan, in whole or in part*.

Federal Interest Rate Authority, 85 FR 44,146-01 (July 22, 2020) (emphasis added).

The FDIC rule is codified at 12 C.F.R. § 331.4. Section 331.4 "clarifies the rights and obligations that have always existed under section 27 of the FDIA." *Williams v. Encore Capital Group, Inc.*, 19-5252, 2022 WL 3722096, *3 (E.D. Pa. Aug. 29, 2022).

### 2. "Unlawful Debt" Collection Under RICO

Section 1962(c) provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity <u>or collection of unlawful debt</u>.

---

[7] The Petition for Writ of Certiorari in that case was denied. *Midland Funding, LLC v. Madden*, 579 U.S. 927, 136 S. Ct. 2505, 195 L. Ed. 2d 839 (2016).

18 U.S.C. § 1962(c) (emphasis added).  Section 1962(d) provides that "[i]t shall be unlawful for

any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

18 U.S.C. § 1962(d).  An "unlawful debt" is defined in 18 U.S.C. § 1961(6) as:

> [A] debt (A) incurred or contracted in gambling activity which was in violation of
> the law of the United States, a State or political subdivision thereof, or which is
> unenforceable under State or Federal law in whole or in part as to principal or
> interest because of the laws relating to usury, and (B) which was incurred in
> connection with the business of gambling in violation of the law of the United
> States, a State or political subdivision thereof, or the business of lending money or
> a thing of value at a rate usurious under State or Federal law, where the usurious
> rate is at least twice the enforceable rate.

18 U.S.C. § 1961(6).  Plaintiff did not allege that gambling activities are at issue and, thus, to

establish that Hyphen or Lead Bank collected an "unlawful debt," she must demonstrate that they

both:  (1) were in the business of lending money or a thing of value; (2) collected a debt that was

unenforceable under Georgia usury laws; and (3) that the debt Lead Bank and Hyphen collected

was at least twice the enforceable rate under Georgia law.  *Nolen v. Nucentrix Broadband Networks

Inc.*, 293 F.3d 926, 929 (5th Cir. 2002).  Notably, again, Plaintiff, however, did not bring a usury

claim against Lead Bank and did not allege that Lead Bank violated "Georgia usury laws."  (Doc.

1.)

### B.    Georgia Law

The essential elements of usury under Georgia law are: "(1) a loan or forbearance of money,

express or implied; (2) made with an understanding that the principal shall or may be returned; (3)

that provides a profit greater than that authorized by law in exchange for such loan or forbearance;

and (4) with an intent to violate the law." *Kante v. Countrywide Home Loans*, No. 09-01233, 2010

WL 11520068, at *8 (N.D. Ga. Mar. 24, 2010).  The amount authorized under O.C.G.A. § 7-4-2

where the principal involved is $3,000 or less is at a rate not to "exceed 16 percent per annum

simple interest . . . unless the loan, advance, or forbearance to enforce the collection of any sum of

money is made pursuant to another law."  Ga. Code Ann. § 7-4-2.  An action for usury claims set forth in O.C.G.A. § 7-4-10 have a one-year statute of limitations.

"The determination of whether or not usury exists must be made as of the time the contract is executed because the taint of usury does not result from payment but from the agreement, performed or unperformed."  4 Ga. Jur. § 4:25; *Latimore v. Vatacs Grp., Inc*., 317 Ga. App. 98, 99–100, 729 S.E.2d 525, 527, *adopted,* (Ga. Super. 2012).

Statutes pertaining to Georgia's regulation of so-called "payday loans" are found in O.C.G.A. § 16-17-1, *et seq.* (known as the Payday Lending Act).  Section 16-17-2(a) provides that it is unlawful to engage in the business of "making, offering, arranging, or acting as an agent in the making of loans of $3,000 or less" unless certain terms and conditions are established.  There is no civil cause of action for aiding and abetting a violation of the Payday Lending Act.  *Flagg v. First Premier Bank*, 257 F. Supp. 3d 1351, 1367 (N.D. Ga. 2017).

Plaintiff does not allege that Lead Bank violated the Payday Lending Act (*see* Doc. 1 ¶¶ 108-115), nor could she because the Georgia Supreme Court has recognized that federal preemption rules limit a state's authority to regulate federally chartered banks or banks chartered by other states.  *Western Sky Financial, LLC v. Olens*, 300 GA 340, 344 (2016); *e.g., California v. Fed. Deposit Ins. Corp.*, 584 F. Supp. 3d 834, 838 (N.D. Cal. 2022) (holding that Section 27 of the FDIA preempts state constitutions or statutes).  Indeed, the law is clear that FDIC-insured, state-chartered banks are not subject to Georgia's usury laws, and Plaintiff does not allege that Lead Bank violated Georgia's usury laws.[8] *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1259 (11th

---

[8] Other states have challenged the validity of the FDIC Rule, but in *California v. Fed. Deposit Ins. Corp*., 584 F. Supp. 3d 834 (N.D. Cal. 2022), the court held that the Rule is valid and that state law contrary to the FDIC Rule is preempted.  *Id.* at 840.

Cir. 2011) (holding that FDIC-insured, state-chartered banks are not subject to Georgia's usury laws).

## III.    STANDARDS OF REVIEW

To survive a motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.

Although courts accept the well-pleaded allegations as true on a motion to dismiss, "the court need not accept legal conclusions, nor must it accept as true legal conclusions couched as factual allegations." *Flagg v. First Premier Bank*, 257 F. Supp. 3d 1351, 1356 (N.D. Ga. 2017) (citing *Iqbal,* 556 U.S. at 678). "Thus, evaluation of a motion to dismiss requires the court to assume the veracity of well-pleaded factual allegations and 'determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

When a plaintiff attaches exhibits that contradict the allegations in the complaint, the exhibits control. *See, e.g., Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) ("It is the law in this Circuit that when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.")

## IV.    ARGUMENT

Lead Bank should be summarily dismissed from this case because Plaintiff does not allege that it violated any "Georgia usury laws." (Doc. 1.) Thus, because Plaintiff does not allege that Lead Bank violated any such laws, Plaintiff cannot possibly state a claim against Lead Bank for violating or conspiring to violate RICO based on collection of "unlawful debt."

Regarding Plaintiff's claim against Hyphen for violations of "Georgia Usury Laws," that claim fails because: (1) the loan agreement controls, and it provides that the loan was issued by Lead Bank; and (2) Plaintiff admitted that she executed her loan with Lead Bank. (Doc. 1 ¶ 20.)

Furthermore, because Plaintiff has no claim against Lead Bank for violation of "Georgia Usury Laws" <u>and</u>, also, because the loan was issued by Lead Bank, Plaintiff cannot establish her RICO[9] claims against either Defendant. Her RICO claims are insufficient because she cannot establish an "enterprise." Without a RICO enterprise, Plaintiff cannot state prima facie claims for the causes of action set forth in Counts II – IV. *See Hall v. White*, No. 07-S-484, 2008 WL 11380043, at *8 (N.D. Ala. Mar. 11, 2008) (discussing a prima face case for violation of sections 1962(d) and (c) of RICO).

Indeed, Plaintiff's RICO claims fail because the asserted "associated-in-fact" enterprise *assumes* that Lead Bank and Hyphen both violated Georgia law and that they associated for that purpose (and conspired to violate RICO). Plaintiff's allegations are not entitled presumption of truth because the loan agreement controls, Plaintiff admitted that she executed her loan with Lead Bank, and Plaintiff has not alleged that Lead Bank violated Georgia law. (Doc. 1 ¶ 20; Doc. 1-1; *see generally*, Doc. 1.)

### A.    Lead Bank Should Be Summarily Dismissed

Plaintiff's claims against Lead Bank are predicated on her allegation that it participated "in the collection of unlawful debt." (*E.g.*, Doc. 1 ¶ 120.) Plaintiff's allegation is not plausible because the loan is not "unlawful" vis-à-vis Lead Bank.

---

[9] "RICO" is the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. §§ 1961-1968.

Indeed, Plaintiff does not allege that _Lead Bank_—as opposed to Hyphen—violated the Payday Lending Act, nor could she because Lead Bank is exempt from the Payday Lending Act. _Western Sky Financial,_ 300 Ga. at 364.   Plaintiff also does not assert that Lead Bank (as distinguished from the alleged "Enterprise") violated Georgia usury law, again, nor could she because Section 27 of the FDIA preempts state law claims of unlawful interest against Lead Bank. _See, e.g._, _Beneficial Nat'l Bank v. Anderson_, 539 U.S. 1, 11 (2003); _Sullivan v. Am. Airlines, Inc._, 424 F.3d 267, 275 (2d Cir.2005).; _see also Pac. Capital Bank, N.A. v. Connecticut_, 542 F.3d 341, 352 (2d Cir.2008) ("[A] state in which a national bank makes a loan may not permissibly require the bank to charge an interest rate lower than that allowed by its home state.").

Of course, Section 1962 states a requirement of "racketeering activity" as a predicate for a civil RICO action.   _Berger v. Pierce_, 933 F.2d 393, 397 (6th Cir. 1991).   RICO requires that for a "racketeering activity," the defendant must be variously, "chargeable," "indictable," or "punishable" for violations of specific state and federal criminal provisions.   _Id._ (citing 18 U.S.C. § 1961(1).)   However, Plaintiff has not asserted that Lead Bank committed a predicate act (i.e., collection of unlawful debt) and, moreover, a predicate act is not chargeable, indictable, or punishable vis-à-vis Lead Bank.   Thus, the Section 1692(c) and the concomitant state law claim fail as a matter of law.

Regarding the conspiracy claims, they are equally defective because "parties cannot be found guilty of conspiring to commit an act that is not itself against the law."   _Parm v. Nat'l Bank of California, N.A._, No. 14-0320, 2015 WL 11605748, at *26 (N.D. Ga. May 20, 2015) (cleaned up), _aff'd,_ 835 F.3d 1331 (11th Cir. 2016).   Indeed, the Eleventh Circuit has held that "if the underlying allegations of RICO are not viable, a conspiracy based on those violations must fail."   _Jackson v. BellSouth Telecomm._, 372 F.3d 1250, 1269 (11th Cir. 2004).   Again, here, there is no

11

claim (let alone a plausible one) that Lead Bank violated the Payday Lending Act or Georgia usury law.  (*See* Doc. 1.)

Furthermore, any allegations that Lead Bank is not the true lender (*e.g.,* Doc. 1 ¶ 93) and conspired to collect unlawful debt, are "formulaic recitations" of a conspiracy and this case does not present the circumstance where the plaintiff has plausibly alleged that the bank did not actually make the loan (because the loan agreement provides that Lead Bank issued the loan <u>and</u> Plaintiff admits that she executed the loan with Lead Bank in her Complaint).  *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1310 (11th Cir. 2022) (holding that "formulaic recitations" of a conspiracy are insufficient); *cf. Community State Bank v. Strong*, 651 F.3d 1241, 1260 (11th Cir. 2011) (discussing a RICO conspiracy for purposes of a basis for jurisdiction of a claim in a petition to compel arbitration).  (Doc. 1 ¶ 20; Doc. 1-1).  Thus, Plaintiff's claim that Lead Bank conspired "to use the Enterprise to collect unlawful debt" is insufficient as a matter of law.

For these reasons, the Complaint should be dismissed in its entirety as to Lead Bank.

**B.    Plaintiff's Claim Against Hyphen For "Violations of Georgia Usury Laws" Fails Because The Loan Was Issued By Lead Bank And Federal Law Preempts Plaintiff's "True Lender" Claim**

Plaintiff asserts that Hyphen violated the Payday Lending Act because it charged and collected interests at a rate greater than the rate allowed under the Act, made loans to Georgia consumers without being licensed, and because it is the "de facto lender."  (Doc. 1 ¶¶ 108-115.) All of Plaintiff's allegations are predicated on the allegation that Hyphen is the "true lender," and she relies upon Section 16-17-2(b)(4) of the Payday Lending Act, which states that "[a]ny arrangement by which a de facto lender purports to act as the agent for an exempt entity" shall be subject to the Payday Lending Act.  O.C.G.A. § 16-17-2(b)(4).  For the reasons set forth below,

Plaintiff's allegation that Hyphen issued the loan and legal conclusion that Hyphen is the "true lender" should be rejected as contrary to law.

Again, the loan agreement states that the loan was issued by Lead Bank and Plaintiff admitted that the loan agreement identifies Lead Bank as the lender. (Doc. 1 ¶ 93.) Thus, Plaintiff's allegation that Hyphen issued the loan is contrary to the loan agreement and pursuant to Eleventh Circuit precedent, the loan agreement controls. *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (holding that "[i]t is the law in this Circuit that 'when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.'").

Regarding whether Hyphen is the "true lender" or "de facto lender," federal law demonstrates that the loan was valid when made and Georgia's Payday Lending Act is a constraint on Lead Bank and is subject to federal preemption. *See Kaur v. World Bus. Lenders, LLC,* 440 F. Supp. 3d 111, 118 (D. Mass. 2020) (holding that "[s]tate regulations attempting to constrain a federally chartered bank that conducts business within that state are subject to federal preemption.") (citing *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 33 (1996); *McClellan v. Chipman*, 164 U.S. 347, 349-57 (1896)). In cases such as this an "express conflict" exists in the regulation of lending transactions and state law yields to federal law. *Id.* "Federal statutes and regulations may also preempt state law by implication when they are pervasive within an area of law to the extent it is clear Congress intended them to predominate." *Kaur*, 440 F.Supp. 3d at 118 (citing *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152-53 (1982)).

As a result of these principles of preemption, the Court should determine that the loan is exempt from the Payday Lending Act and dismiss the "Georgia Usury Laws" claim against Hyphen. Also, because the "Georgia Usury Laws" claim fails, the RICO claims against Hyphen

must also fail because there is no plausible claim that Hyphen issued the loan at a rate usurious under state law, or that it conspired to do so.

### C.    Plaintiff's Federal and State RICO Claims Against Hyphen And Lead Bank Should Be Dismissed Because Plaintiff Has Not Established An "Enterprise"[10]

Plaintiff's RICO claims against Hyphen and Lead Bank should be dismissed for the additional reason that has not (and cannot) state prima facie state or federal RICO claim.

To prove a violation of 18 U.S.C. § 1962(c), a plaintiff must establish: "(1) the existence of an enterprise which affects interstate or foreign commerce; (2) that the defendant associated with the enterprise; (3) that the defendant participated in or conducted the enterprise's affairs; and (4) that the participation in or conduct of the enterprise's affairs was through a pattern of racketeering activities." *Flagg v. First Premier Bank*, 257 F. Supp. 3d 1351, 1356 (N.D. Ga. 2017). "The requirements of section 1962(c) must be established as to each individual defendant." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001). "Subsection 1962(d) prohibits conspiracies to violate subsection (c)." *Ricks v. Handi-House Mfg. Co.*, No. 17-89, 2019 WL 1338415, at *8 (S.D. Ga. Mar. 25, 2019).

Section 1961(4) defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C § 1961(4). The Eleventh Circuit has stated that, "[i]n the simple case, the enterprise is an 'individual, partnership, corporation, association, or other legal entity.'" *Flagg*, 257 F. Supp. 3d at 1357 (N.D. Ga. 2017) (quoting *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1067 (11th Cir. 2017)). However, the more challenging case occurs "when the

---

[10] An action under the Georgia RICO statute, O.C.G.A. § 16–14–1 *et seq.,* and one under the federal RICO statute, 18 U.S.C. § 1961 *et seq.,* are "essentially the same." *Cmty. State Bank v. Strong*, 485 F.3d 597, 608 (11th Cir.), *reh'g en banc granted, opinion vacated,* 508 F.3d 576 (11th Cir. 2007), *vacated on other grounds,* 565 F.3d 1305 (11th Cir. 2009).

enterprise is alleged to be a 'union or group of individuals associated in fact although not a legal entity.'" *Id.* Such is the case here, where Plaintiff claims that Lead Bank and Hyphen violated Section 1962(c) through participating in an "enterprise" associated for "the common purpose of profiting off the collection on unlawful debt." (Doc. 1 ¶¶ 118, 128.)

To plead an association-in-fact enterprise, a plaintiff <u>must</u> "allege that a group of persons shares three structural features: (1) a 'purpose,' (2) 'relationships among those associated with the enterprise,' and (3) 'longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020) (cleaned up). As set forth above, the parties cannot possibly share the common purpose of profiting from the collection of unlawful debt because there are no plausible allegations that Lead Bank did anything unlawful <u>*or*</u> that the Hyphen violated "Georgia usury laws" (because it did not issue the loan and Georgia law does not apply to the loan). Moreover, there are no allegations to support that Lead Bank and Hyphen participated in "the Enterprise's" affairs, as opposed to its own affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (holding that "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs," § 1962(c), one must participate in the operation or management of the enterprise itself); *see also*, *Flagg v. First Premier Bank*, 257 F. Supp. 3d 1351, 1362 (N.D. Ga. 2017).

Instead, the loan agreement demonstrates that Lead Bank issued the loan, and that Hyphen serviced it (of course, as any borrower knows, it is a normal function of a loan servicer to accept loan payments). The allegations demonstrate that Lead Bank and Hyphen participated in their own affairs—not a separate "Enterprise." As such, Plaintiff has not (and cannot) established that Lead Bank and Hyphen participated in a RICO enterprise. As such, Counts II to IV of the Complaint should be dismissed with prejudice.

A.      **Plaintiff Has Failed To Demonstrate A RICO Conspiracy**

Plaintiff's RICO and concomitant state law conspiracy claim fails for the additional reason that she has not demonstrated that Hyphen and Lead Bank agreed to commit a substantive RICO offense.  *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 239 (5th Cir. 2010) (holding that to demonstrate a RICO conspiracy, the plaintiff must demonstrate, *inter alia*, "that two or more people agreed to commit a substantive RICO offense").  Again, Plaintiff does not allege that Lead Bank issued the loan in violation of Georgia usury law or the Payday Lending Act, let alone that it agreed to commit a RICO offense.  Thus, she cannot demonstrate that there were two or more persons who agreed to collect "unlawful debt," which is also fatal to her conspiracy claim.

**V.     CONCLUSION**

For the reasons set forth above, Lead Bank and Hyphen ask that Plaintiffs' Complaint be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

DATED this 29th day of January, 2024.

By: /s/ Kurt M. Rozelsky
Kurt M. Rozelsky (Georgia State Bar #617932)
SPENCER FANE LLP
27 Cleveland Street, Suite 201,
Greenville, South Carolina 29601
P: 864.695.5200, F: 864.695.5201
krozelsky@spencerfane.com

Patrick J. McAndrews *(Pro hac forthcoming)*
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106-2140
(816) 474-8100
(816) 474-3216 (facsimile)
pmcandrews@spencerfane.com
*Attorneys for Hyphen, LLC*

and

/s/Corrie Hall
Corrie Hall (Georgia State Bar # 287199)
S. Elizabeth Hall (Georgia State Bar #141718)
James Bates Brannan Groover LLP
231 Riverside Drive, Suite 100
Macon, GA 31201
(478) 742-4280
(478) 749-9949
chall@jamesbatesllp.com
ehall@jamesbatesllp.com
*Attorneys for Lead Bank*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 29, 2024, I electronically filed this **DEFENDANT HYPHEN, LLC AND LEAD BANK'S BRIEF IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE CLAIM** using the CM/ECF system which automatically will send email notification of such filing to all attorneys of record.

This 29th day of January, 2024.

By: <u>/s/ Kurt M. Rozelsky</u>
Kurt M. Rozelsky (Georgia State Bar #617932)
SPENCER FANE LLP
27 Cleveland Street, Suite 201,
Greenville, South Carolina 29601
P: 864.695.5200, F: 864.695.5201